IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RANDY DIXON | : | NO. 07-42 |

REPORT AND RECOMMENDATION

JACOB P.  HART                                    DATE:   August 25, 2011
UNITED STATES MAGISTRATE JUDGE

This is a motion to vacate, set aside, or correct sentence by Randy Dixon, a person currently in federal custody, under 28 U.S.C. § 2255.  For the following reason, I recommend that Dixon's motion be denied.

I.      Factual and Procedural Background

On February 4, 2008, Dixon pled guilty in this court to conspiracy to interfere with interstate commerce by robbery and interference with interstate commerce by robbery under the Hobbes Act, 18 U.S.C. § 1951(a), and using and carrying a firearm during and in relation to a crime of violence, under 18 U.S.C. § 924(c)(1).  Motion at ¶ 5.

As described in his indictment, Dixon had participated in the armed robbery of a parking lot where he was employed.  He acted as the "inside man" who told his co-conspirators – David Green, and an unindicted co-conspirator identified as K.J. – that the parking lot owner had the most money in his office on Monday mornings, before taking the weekend's proceeds to the bank. Indictment at 14.  According to the indictment, Dixon called his co-conspirators on his cell phone on the morning of the robbery, telling them when the owner was alone in the office. Id.  Green entered the office, pointed a gun at the owner, and demanded the money, which the owner turned over to him. Id. at 15.  K.J. drove the getaway car. Id.  Green and K.J. gave Dixon one third of the robbery proceeds.  Id.

The indictment charged David Green with committing three other armed robberies, together with another defendant, Sunni Ali.  Dixon was not alleged to have participated in these robberies.  According to the government, K.J., who hoped to receive a reduced sentence in other charges against him, cooperated with the government, providing the information which led to charges being brought against Green, Dixon and Ali.  Response at n. 1.  K.J. was not named as a defendant in the indictment.

Green pled guilty on December 3, 2007.  Docket at Entry No. 68.  Ali pled guilty on the same date as Dixon, February 4, 2008.  Docket Entries 77 and 80.  On July 17, 2008, Dixon was sentenced to 125 months imprisonment, a five-year period of supervised release, restitution in the amount of $16,700, and a $300 special assessment.  Docket Entry No. 101.

Dixon filed a direct appeal in the Court of Appeals for the Third Circuit.  His counsel, however, filed a brief under Anders v. California, 386 U.S. 738 (1967).  United States v. Dixon, 386 Fed. Appx. 96 (3d Cir. Jul. 6, 2010) (non-precedential).  Under Anders, an attorney seeks to withdraw his appearance, while bringing the appeals court's attention to issues that could arguably support an appeal.  Dixon did not file a *pro se* brief in opposition to counsel's Anders brief.  Id.  On July 6, 2010, the Court of Appeals issued an opinion agreeing with counsel that the issues to which he pointed were not actually meritorious.  Id.  It affirmed the District Court's judgment, and permitted counsel to withdraw.  Id.

On April 25, 2011, Dixon filed a typed submission styled as a Motion under U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence.  Docket Entry No. 140.  He was directed to re-file the motion on the standard form, which he did on May 27, 2011.  Docket Entry No. 143.  In his re-filed motion, he refers in several places to an attached "Memorandum of Law."  However, no

memorandum of law has been filed.  It is possible to infer that Dixon is referring to his original, typed motion.  I have, therefore, supplemented the issues Dixon has raised in Document 143 with information set forth in Document 140.

Dixon accuses the government of selective and vindictive prosecution amounting to prosecutorial misconduct.  He also asserts that his plea counsel rendered ineffective assistance in the following respects: (1) he failed to challenge the portion of the indictment which charged Dixon with possession of a firearm in relation to a crime of violence, under 18 U.S.C. § 924; (2) he failed to "adequately communicate and make an affirmative representation regarding movant['s] basic plea and sentencing information"; and (3) he failed to raise a claim of prosecutorial misconduct based on the government's selective and vindictive prosecution of Dixon.

Further, two claims which were not included in Document 143, Dixon's formal motion, were asserted in Document 140.  Even though these claims can be considered waived, I have discussed them below for purposes of completeness.  These are that counsel was ineffective for (4) failing to challenge the counts for interference with interstate commerce, and (5) failing to seek severance of Dixon's trial from that of co-defendant Sunni Ali.

II.     Discussion

A.      Selective and Vindictive Prosecution

1.      Selective Prosecution

A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive.  United States v. Schoolcraft, 879 F.2d 64, 68 (3d Cir. 1989).  To establish a claim of selective prosecution, a defendant must demonstrate both that (a) persons similarly situated have not been prosecuted; and that (b) the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or to prevent the defendant from exercising a fundamental right.  Id.

It is not been established in the Third Circuit whether the right to raise a claim of selective prosecution survives a valid unconditional guilty plea.  United States v. Davis, 39 Fed. Appx. 702, 704 (3d Cir. 2002) ("While it is an interesting legal question, this case does not require us to decide whether an unconditional guilty plea results in the waiver of a selective prosecution claim").

Even if Dixon has the right to raise a claim of selective prosecution, he has not alleged facts that would support it.  Dixon argues that his prosecution in federal court, rather than state court, was selective because it was based on the consideration that the conviction rate is higher in federal court.  Motion at ¶ 12, Ground Four.  However, at least one court decided in a similar case that the federal adoption of state charges was not selective, even where it led to a potential for higher penalties.  United States v. Lewis, 40 F.3d 1325, 1345 (1st Cir. 1994).  In Lewis, the Court of Appeals for the First Circuit pointed out that this did not amount to a claim that others, who were similarly situated, were not prosecuted.

4

The same is true here.  Dixon has not argued that other similarly situated individuals were not prosecuted, or even that they were not prosecuted in federal court.  See, contra, United States v. Tuitt, 68 F. Supp.2d 4 (D. Mass. 1999) (where a defendant was permitted to conduct discovery on his selective prosecution claim that only black cocaine dealers were prosecuted federally, while similarly situated whites were prosecuted in state courts).

In his earlier submission Dixon also argued that his prosecution was selective, but on other grounds.  There he pointed to the fact that he was prosecuted, while K.J., whose level of involvement was "just as severe (if not greater) than the Movant's" was not.  Document No. 140 at unnumbered page 3.  Clearly, however, this distinction did not rest on an unjustifiable standard such as race or religion, or on some arbitrary factor.  It was based on the valid criteria that K.J. was a cooperating government witness and Dixon was not.

2.    Vindictive Prosecution

Vindictive prosecution exists where the government harbors a personal vindictiveness towards a defendant, or where vindictiveness can be presumed.  United States v. Esposito, 968 F.2d 300, 303 (3d Cir. 1992), citing United States v. Goodwin, 457 U.S. 368 (1982). Vindictiveness may be presumed where the situation presents a reasonable likelihood of a danger that the government might be retaliating against a defendant, usually for exercising a lawful right. Esposito, supra, citing Blackledge v. Perry, 417 U.S. 21, 27 (1974).  For example, when a defendant asserts a statutory right to a trial *de novo*, the government may not substitute a more serious charge for the original one, thereby subjecting the defendant to a significant increase in the potential period of incarceration.  Esposito, supra, citing Blackledge, supra.

5

Dixon has not shown either a personal vindictiveness on the part of the prosecution, or a situation suggesting that vindictiveness can be presumed.  He has not distinguished his claim of vindictive prosecution from his claim of selective prosecution, so the grounds he relies on are presumably (a) the fact that he was prosecuted federally, and (b) the fact that K.J. was not prosecuted.   However, the prosecution's desire to obtain a conviction, and its willingness to make a deal with a cooperating witness, are by no means unusual or suspect.  There is no prosecutorial vindictiveness where the prosecutor's decision to prosecute is based on the usual determinative factors.  Schoolcraft, supra, citing United States v. Oliver, 787 F.2d 124, 126 (3d Cir. 1986).  Further, vindictiveness cannot be presumed here, because neither of the grounds Dixon has raised involves him exercising a right, or taking any other action which would be reasonably likely to provoke the government to retaliate against him.

B.      Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 688 (1984), the United States Supreme Court set out the Constitutional standard for ineffective assistance of counsel:

> First the defendant must show that the counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced that defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 687.

Further, to prove prejudice in the context of a guilty plea, a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty, but would instead have gone to trial.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

6

1.      Possession of a Firearm in Relation to a Crime of Violence

Dixon has written that his first ground for relief is: "Poss. of a firearm in relation to a crime of violence, 18 U.S.C. § 924."  Motion at ¶ 12, Ground One.  Elsewhere on the form, however, Dixon maintains that: "Counsel's failure to raise claim rendered him ineffective assistance, denying Petitioner his right to counsel under the Sixth Amendment U.S. Constitution."  Id. at (b).  I have therefore construed this as a claim of ineffective assistance of counsel.  However, the sentences quoted above constitute the entirety of Dixon's first claim.  He has not explained what the basis for counsel's challenge ought to have been.

This claim must fail for several reasons.  First, in pleading guilty, Dixon admitted to all material facts charged in the indictment, including the 18 U.S.C. § 924 charge.  United States v. Faulks, 143 F.3d 133, 138-139 (3d Cir. 1998).  The Court of Appeals has already reviewed Dixon's guilty plea and concluded that – despite some errors in the plea colloquy – his plea was voluntary and valid.  United States v. Dixon, supra, at 386 Fed. App. 99.  The Court of Appeals found that: "Dixon admitted that he committed each element of his crimes in open court."  Id. Dixon cannot now argue that counsel was ineffective for failing to challenge facts which he subsequently admitted.

Further, Dixon has not really indicated the nature of his claim.  Vague and conclusory allegations such as this in a habeas petition may be disposed of without further investigation by the District Court.  United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

Finally, the transcript of the sentencing hearing suggests that Dixon may be objecting to his conviction under 18 U.S.C. § 924 on the basis that he, personally, did not wield the gun during the robbery.  United States v. Ali and Dixon, Criminal Nos. 07-42-2, 3 (E.D. Pa. Feb. 4,

2008).  However, as was discussed at that hearing, he was charged pursuant to the Pinkerton

doctrine, under which a conspirator is liable for the reasonably foreseeable actions of his co-

conspirators. Id., at 5; Pinkerton v. United States, 328 U.S. 640, 647-48 (1946).  The Pinkerton

doctrine applies to violations of § 924.  United States v. Casiano, 113 F.3d 420, 427 (3d Cir.

1997).  Dixon admitted at the plea hearing that he was aware that one of his co-conspirators

would use a weapon in the commission of the robbery.  Plea Hearing Transcript, supra, at 13, 22,

23.  Thus, even if counsel had challenged the § 924 count, the challenge would have failed.

2.    Adequate Communication

As set forth above, Dixon maintains that plea counsel "was ineffective because of his

failure to adequately communicate and make an affirmative representation regarding Movant['s]

basic plea and sentencing information."  He added: "See Memorandum of Law attached."  As

was also noted above, there is no memorandum of law.  However, in a personal declaration

attached to his April 25, 2011, submission, Dixon argued that there were certain things he

requested of counsel which counsel did not pursue.  These included (1) challenging "the legality

and veracity of the indictment of issue herein"; (2) proceeding to trial, and in particular filing

certain motions in limine; (3) seeking a Bill of Particulars; (4) seeking a Franks hearing; (5)

giving Dixon copies of agreements entered between the government and K.J. and David Green;

and (6) meeting with Dixon as he requested.

Dixon has not made any specific argument with respect to any of these allegations of

ineffective assistance that, but for counsel's error, he would not have pled guilty.  Therefore,

these claims can be denied under Hill v. Lockhart, supra.  Even aside from this, however, it does

not appear that counsel was constitutionally ineffective in any of these respects.

8

a.      Dixon's First Two Allegations

In neither his April 25, 2011, filing nor his May 27, 2011, motion, has Dixon specified what challenge his counsel should have made with regard to the legality or veracity of the indictment.  In other places in his motion, Dixon has challenged the charge under 18 U.S.C. § 924, and the Hobbes Act charge.  However, as described elsewhere in this Report, those challenges have no merit.  If that is the substance of this claim of ineffective assistance of counsel, then it should be denied.  Otherwise, it can simply be denied as vague and conclusory under United States v. Thomas.

Dixon's second allegation, that his counsel was ineffective for failing to go to trial and file certain motions in limine, is moot in the absence of an effective challenge to the informed and voluntary nature of Dixon's guilty plea.  In other words, if Dixon voluntarily elected to plead guilty, his counsel cannot be found ineffective for failing to proceed to trial.

b.      Bill of Particulars

A bill of particulars defines an indictment and limits the prosecution, in order to promote an accused's right to adequate notice of the charges and to protect him from a second prosecution for an inadequately described offense.  United States v. Smith, 776 F.2d 1104, 1115-6 (3d Cir. 1985).

Dixon claims that counsel was ineffective in failing to request a bill of particulars from the government.  However, he has not explained how he was harmed by counsel's failure to request one, or how obtaining one would have affected the case.

It is not apparent from reading the indictment that a bill of particulars would have helped Dixon.  The three counts against Dixon were set out thoroughly, in five pages.  Indictment at 13-

9

17. Count Eight, which charges conspiracy to commit robbery, included ten enumerated overt acts, in such detail as: "Defendant Randy Dixon told Defendant David Green and unindicted co-conspirator K.J. to commit the robbery of the 9th Street Parking Lot on a Monday morning, because that was when the parking lot owner had the most money in the office," and "Later that day, K.J. met defendant Randy Dixon and gave him one-third of the robbery proceeds." Indictment at 14-15.

Thus, it appears that the indictment provided adequate notice to Dixon of the charges against him.  Dixon has not, therefore, shown that counsel was ineffective in failing to request a bill of particulars, or that he was harmed by counsel's failure to do so.

c.      Franks v. Delaware

Under the doctrine established in Franks v. Delaware, 438 U.S. 154 (1978), a defendant's motion to suppress evidence will be granted if he can demonstrate that the police recklessly misstated or omitted information from a warrant affidavit, and that the determination of probable cause hinged on the omitted material.  United States v. Sanchez, 246 Fed. Appx. 803, 805 (3d Cir. 2007) (not precedential).

Dixon has not explained what evidence should have been suppressed, or why.  The government maintains that no property in which Dixon had a privacy interest was even searched. Response at 14.  On these facts, moving for a Franks hearing would clearly have been frivolous. Counsel cannot be found ineffective for failing to file meritless motions.  United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

10

d.       Copies of Plea Agreements

As the government points out in its Response, it is clear from the material Dixon sent to counsel during the pendency of his case, and which is attached to his April 25, 2011, filing, that Dixon was well aware that K.J. and David Green were cooperating with the government in order to obtain leniency from the court.  Dixon suggested to his counsel that this be emphasized to the jury.  It is not, therefore, clear what benefit Dixon would obtain from seeing copies of the actual plea agreements.  Accordingly, Dixon has not shown that counsel was ineffective for failing to provide him with the plea agreements.

e.       Failing to Meet With Dixon

Finally, Dixon maintains that his counsel was ineffective in failing to meet with him as he requested.  It is clear that Dixon requested a meeting with counsel in a letter to him which is marked: "reviewed 8/9/07."  Dixon attached this letter to his April 25, 2011, filing.  It is not clear whether counsel met with him after receiving the letter.  However, even assuming that counsel was ineffective in failing to meet with Dixon, it does not appear that this failure injured Dixon.

In the letter to counsel, Dixon stated that he wanted to discuss: (a) the possibility of a suppression hearing and/or a Franks hearing; (b) obtaining a bill of particulars and (c) the criminal histories of K.J. and David Green and their "outcomes", i.e. "what was the outcome as the result of their arrest," apparently in order to show that the men had histories of avoiding severe punishment by revealing the names of minor co-conspirators to the government.

As discussed above, however, there is no merit to Dixon's argument that his counsel was ineffective for failing to pursue these suggestions.  For that reason, Dixon has not shown that he was injured by his counsel's failure to meet with him to discuss them.

11

3.      Failure to Raise a Claim of Prosecutorial Misconduct

Dixon maintains that counsel was ineffective for failing to raise a claim of selective
and/or vindictive prosecution.  As discussed above, such claims would not have been
meritorious.  For this reason, his counsel was not ineffective in failing to raise them.

4.      The Hobbes Act

Although Dixon has not raised a challenge to his conviction under 18 U.S.C. § 1951(a),
the Hobbes Act, in his properly filed § 2255 Motion, he did briefly discuss the Hobbes Act in his
April 25, 2011, filing.  After explaining that the passage of the Hobbs Act was related to the
United States Supreme Court's decision in United States v. Local 807, 315 U.S. 521 (1942),
Dixon wrote:

> In the case at bar, the indictment illustrates Movant's involvement as an "inside
> man" to a robbery of a parking lot where he had been employed.  The extent of
> Movant's role was to provide information to the *unindicted* individual known as
> K.J. and/or the "getaway driver".  The actions of Movant in these regards is a far
> cry from the original legislative intent of the Hobbs Act.

Document 140 at unnumbered page 3.

Dixon has not specified the respect in which his actions were a "far cry from the original
legislative intent of the Hobbs Act."  He may have meant that his single armed robbery was
dissimilar to the extortion scheme at issue in United States v. Local 807.  However, the Hobbs
Act itself criminalizes "extortion or robbery" affecting interstate commerce.  18 U.S.C. §
1951(a).  It is certainly used in cases involving the armed robbery of a business.  See e.g., United
States v. Clausen, 328 F.3d 708 (3d Cir. 2003).

Alternatively, it is possible that Dixon is claiming that interstate commerce was not
sufficiently implicated.  However, it was alleged in the indictment that the 9th Street Parking Lot,

12

which was robbed, engaged in interstate commerce.  Indictment at Count Eight, ¶ 1.  The government asserts in its Response that the lot provided parking to vehicles from many states, particularly New Jersey.  Response at 2.  A Hobbes Act claim is valid even where the effect on interstate commerce is minimal.  United States v. Clausen, 328 F.3d 708, 709-711 (3d Cir. 2003).

Thus, it is not apparent on the record how Dixon's counsel could be considered ineffective in failing to challenge the Hobbes Act charge.

5.    Severance of Dixon's Trial from Ali's

Finally, Dixon wrote in his April 25, 2011, filing that his counsel was ineffective for failing to seek severance of his charges from those of his co-defendant, Sunni Ali.  It is not necessary to decide whether counsel should have sought severance, however, because it is clear that Dixon was not harmed by any failure in this regard.  The transcript of the Change of Plea Hearing shows that Dixon and Ali were in the courtroom together, and saw each other plead guilty.  United States v. Ali and Dixon, Criminal Nos. 07-42-2, 3 (E.D. Pa. Feb. 4, 2008), supra. In fact, the court accepted Ali's guilty plea before Dixon's.  Id. at 20.  For this reason, it must have been clear to Dixon at that moment that if he changed his mind and declined to plead guilty, he would not be tried together with Ali.

Nevertheless, Dixon proceeded to plead guilty.  Accordingly, he cannot now show that, but for counsel's errors, he would have gone to trial, as required by Hill v. Lockhart, 474 U.S. 52, 59 (1985).

**The petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.**

IV.    <u>Conclusion</u>

Based on the foregoing, I make the following:


## **R E C O M M E N D A T I O N**

AND NOW, this  25th  day of     August              , 2011, IT IS RESPECTFULLY

RECOMMENDED that the petition for writ of habeas corpus be DENIED.  There is <u>no</u> basis for

the issuance of a certificate of appealabilty.




BY THE COURT:


/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RANDY DIXON | : | NO. 07-42 |

O R D E R

BERLE M. SCHILLER, J.

AND NOW, this          day of                    , 2011, upon careful and

independent consideration of the petition for writ of habeas corpus, and after review of the

Report and Recommendation of the United States Magistrate Judge Jacob P. Hart, it is

ORDERED that:

1.      The Report and Recommendation is APPROVED and ADOPTED;

2.      The petition for writ of habeas corpus is DENIED.

3.      There is no basis for the issuance of a certificate of appealability.

BY THE COURT:

_____
BERLE M. SCHILLER, J.